Our next case for argument this morning is North American Elite Insurance v. Menard. Thank you, Your Honor. May it please the Court. The allegations in this case are about as alarming as they can be when it comes to a self-insured proceeding to trial unreasonably and gambling with millions of dollars in umbrella insurance limits. The conduct in this case... Mr. Sterling, time is short, so I want to ask you what my central question is. The primary policy had a clause in it requiring Menard to look out for the primary carrier's interests. Your excess policy lacked such a clause. Why should we create a clause that your own client chose not to put in its policy? Thank you, Your Honor. So for a couple reasons. One, the underlying policy that you mentioned actually was not a primary policy. It was the first layer of insurance above a $2 million self-insured intention. No, no. It's the primary policy. There's a $2 million deductible. Menard does not insure itself. It bears its own risk. Insurance is the shifting of risk. It's just jargon to refer to this as self-insured retention. It's not insurance. The primary $1 million policy has the clause, and now I wish you would address my question instead of quibbling with it. Sure. So the policy that North American Elite issued was an umbrella policy above the $1 million Greenwich policy, and then the Greenwich policy provided that Menard would defend itself unless Greenwich obtained a defense. The Menard or the NAE policy sits above not just that policy on the commercial general liability line, but above six different kinds of liability insurance, aviation liability, employer's liability, and it's not… I'm able to address my question. Time is short. NAE would not put in a provision that's the same as that underlying policy because there's not a self-insured retention in all the lines that the umbrella policy may cover below it, but beyond that, the reasonable explanation… You would have the same incentives and dynamics under any of those liability policies, wouldn't you? No, because none of the other liability policies had a self-insured retention. You mean none of the other policies had a deductible? None of the other policies… Insurance from $1? None of the other policies had Menard defending itself and having the settlement control. Let me throw in one thought here. This $1.9, almost $2 million settlement offer comes in, and you have written this as though Menard had no interest in whether it was going to have to fork over that first $2 million. Now, of course, Menard probably begs to differ with that. If they genuinely thought, erroneously as we all know in hindsight, but if they genuinely thought that they had a very substantial chance of winning this trial, then why wasn't it entirely rational for them to say we don't want to take that settlement without even thinking about NAE or Greenwich or anyone else? Well, that sets up the conflict of interest. If they genuinely believed they had a reasonable chance of a defense verdict, then that would be a determination of reasonableness and the excess insurer would not have a case. But that's a fact question here. Well, all I'm saying is you seem to be horrified at the implications of this. In fact, they do enter into this high-low agreement, saving you guys more than $6 million because the verdict was so high that the $6 million cap comes in. But I don't see anything, especially in the absence of the kind of clause that Judge Easterbrook is talking about. They're evaluating this from their point of view. They have every incentive to save themselves some money if they can. They know it's not going to help them if there's a $12 million verdict. They're still going to have to pay the $2 million. That's enough to create an incentive, isn't it? The allegations in this case are that they were advised by their own defense counsel that it was unlikely that they would obtain a defense verdict. So that goes along with general duty to settle jurisprudence that if they're unlikely, they may have a 10% chance of getting a defense verdict. But where's your, I mean, there's a lot of discussion in the briefs about where that duty to settle comes from, certainly not the insurance policy. Well, it comes from the insurance policy and the reasonable expectations of the parties and the implied covenant of good faith and fair dealing. Wait, are you saying that parties reasonably expect that elaborate language in an insurance policy just doesn't make any difference at all? Right? The primary carrier has elaborate language imposing on Menard a duty to protect the primary carrier. Your policy doesn't. And you're saying a reasonable insured expects that that substantial difference in language is totally irrelevant. No, I'm saying that that substantial difference in language is taking account of because of the function of the different layers of insurance. Because in its own defense, Menard had the duty of utmost good faith to accept settlement. To Greenwich. To Greenwich. Okay, so, and you want to ride piggyback on that with a silent policy, as I understand it. So my question is, suppose the plaintiff in the underlying case had offered a demand for $2.95 million? That would not be a demand within limits. Then it would be the excess insurer looking to Greenwich or the insured, depending on who was making the settlement decision. Sorry. My question is, if the settlement offer had been for $2.95 million, so in essence you're almost exhausting both Menard's own obligations and Greenwich's obligations. What makes you think that you'd have a claim against Menard for rejecting a $2.95 million policy? It goes back to this court's decision in Twin City. Which depends upon the terms of the policy, right? Depends upon the- Which is not a decision by an Illinois court. There's no decision by an Illinois court on this specific question. There are four cases in the country, and it's the same four cases that were addressed in Twin City. There's a- if the insured unreasonably presses the case to trial knowing that they're likely to lose, then- Why is this case in federal court? This case is in federal court because it's a diversity jurisdiction case. I understand the answer that there is jurisdiction in 1332. The question I'm asking is, if there is no Illinois law on the subject, no real Illinois law on the subject, why do you come to federal court rather than going to state court and generating real Illinois law? So, a couple things. One is just the general- a client may wish to litigate in federal court, but the- I don't think you're getting the gist of my question. Maybe I'm not being elaborate enough. We have long said that in cases that are in federal court under the diversity jurisdiction, we don't make up new rules of state law. We apply state law as we find it. In response to the questions from the bench, you say, well, there just is no Illinois law establishing the principle for which you are arguing. Well, under the circumstances, we don't tend to make things up. You see the problem. And I apologize if I said there's no principle establishing it. I do think there's plenty of Illinois law establishing that a party must exercise discretion. There's plenty of Illinois law saying that the insurance carrier must exercise particular duties via the insured. I'm looking for Illinois law saying, and oh, by the way, the insured owes the same duties to the insurance carrier. Where are those cases? There are two in a tort context. It's Shaw Bovis and Central Illinois Public Service. But in the contractual, the breach of contract setting, we go back to- it's not just insurance cases. It's the breach of good faith and fair dealing and how that applies when a party's invested with discretion. And there's no exception that an insurer cannot assert that in a breach of contract claim. Thank you. Thank you, Mr. Sterling. Mr. Morris. Good morning. May it please the court. Thomas Marinson on behalf of the Apple E. Menard, Inc. I'm going to try not to retread the ground that's already been covered in your questions unless you have similar questions for me. I think what I would really focus on is the fact that insurance companies and insureds are treated very differently under Illinois law. And the notion that you can simply transpose a duty to settle that flows from insurance companies to insureds and turn that into a reciprocal duty that flows to the insurance company is just a misreading of the general nature of insurance jurisprudence and duty to settle jurisprudence. I assume you mean in the absence of some provision in the insurance agreement itself such as the one in Greenwich. I think that's absolutely right. And the whole idea of the implied covenant of good faith and fair duty is that it's got to be exercised in conjunction with the reasonable expectations of the parties and to bring about the reasonable expectations of the parties. And under the facts of this case in particular where you have a primary policy that did expressly impose a duty to settle on the insured and then you have an excess policy issued by North American that did not, you can't simply treat those two policies as if they are entirely the same. A critical part of your argument as I understood it is that the duty of good faith and fair dealing, etc., isn't an extra clause in every contract. It's more in the nature of a rule of interpretation or something of the sort. That's correct. And there are a number of Illinois and Seventh Circuit cases that stand for the proposition that it's really there for two purposes. One is to help interpret an ambiguous provision. And there's been no position taken by North American that its own policy that it drafted is ambiguous. And second is gap filled to take care of an area that the parties didn't contemplate at the time they entered into the agreement. Clearly not the case here. The issue of disputes arising between insureds and their insurance companies about whether or not to settle a case against the insured is one essentially as old as liability insurance. It's why the duty to settle was imposed against insurance companies in the first place. And if you look at the development of that case law, what it tells us is that the courts that developed that case law looked at what insurance companies had done in drafting their policies and said, look, the insurance companies have drafted for themselves the right to control the defense and settlement of claims against their insureds. And yet they have not created a contractual remedy for the insured where the insurance company, given that control, unreasonably refuses to settle a case against their insured. So just to clarify, do I correctly remember that North American could have intervened to control this process more but simply chose not to? They didn't have a contractual right to demand taking over the defense. They did have a right to assume control of the defense if that was allowed by the insured. And we pointed that out just to say, that's one more avenue they could have taken here. The fact that they didn't even ask to assume control of the defense is further indication that they didn't even take advantage of those contractual rights that they did draft for themselves. And plenty of liability policies do provide an absolute right to take control of the defense, right? That's absolutely right. So in this case, suppose NAE had decided and everybody agreed, okay, you guys get to take control of the defense. And the plaintiff, I don't know if this is realistic, but the plaintiff says we'd like $2.5 million. Would NAE have been in a position to accept that offer where it would not have had to put up a penny? Are you talking about with the policy language they have here? With the policy language they have here, if everybody had agreed, you guys assume the defense. If there had been agreement of the primary insurer and North American that they could control defense of the underlying case, they would have the power to accept the settlement absent some conflict of interest between the parties, which there may or may not be. There's a whole body of case law around that. Okay, Mike, maybe I'm naive about this, but I'm assuming a $2.5 million settlement here, meaning Menard pays $2 million, Greenwich pays a half a million, and NAE pays nothing. Yeah, well, I think the answer to that presupposes that Menard has given up its retention and is willing to give its retention. Otherwise, it doesn't seek control, if that answers your question. I'm not sure it does, but I'm not sure it's a fruitful one. Yeah, I think maybe to take a step back, one of the things that they bargained for, that Menard bargained for here, was to control its own defense unless it arrived at the position that its retention was gone. So if it wanted to take a gamble that it could save part of its retention, at least with respect to North American, the contract with North American gave it that power and that right. And I think it's important to recognize that there are a number of different excess insurers that Menard could have turned to to try to buy coverage from, and it should have the right to choose from policies that do contain language that imposes a duty to settle on the insured and policies that do not contain that language. That's part of the freedom of contract. That's part of public policy in this state and others. And maybe just to address a couple other issues that weren't touched upon in the appellant's argument, we also think the district court was absolutely right in not extending a tort duty, a bad faith tort duty under the circumstances here. And we think that there's both an Illinois Supreme Court opinion and a Seventh Circuit opinion that fell closely on the heels of that Illinois Supreme Court opinion that established that. The Illinois State Supreme Court case is Voyles v. Sandia Mortgage, and the court expressly said in that case that they were not going to extend the bad faith tort failure to settle And that was closely followed by this circuit's decision in APS sports collectibles. I must say to you, as I did to Mr. Sterling, I don't see what this circuit's decisions or federal district court decisions have to do with the price of bread. We're supposed to be figuring out what Illinois law is based on what Illinois courts have said. We're in violent agreement on that point. I merely wanted to point out that the Seventh Circuit has indeed followed the Illinois Supreme Court opinion in Voyles, and I agree, Voyles answers the question on the tort duty. We'd better just say we've done our best to follow. The difference is we are ventriloquist dummies, and the question is whether you emphasize the first word or the second in that reference. Fair enough. And finally, you know, one of the things that was argued, I think, more below, but still North American has attempted to argue here, is that there was some breach of an express contract provision here, and that's simply not the case. They've tried to tack on a duty to settle to the cooperation clause of the policy, and we don't think it's surprising that they haven't been able to muster a single case that has stretched the scope of the cooperation clause that far. And I think with that, unless the panel has any other questions for me, I would conclude my argument. Thank you very much. The case is taken under advisement.